UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRANDON REXROAT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:20-cv-00326-JPH-MG ) |
| CHAPMAN, | ) ) ) |
| Defendant. | ) |

**ORDER ON SUMMARY JUDGMENT**

Defendant, Sarah Chapman—a Disciplinary Hearing Officer at Wabash Valley Correctional Facility—found Plaintiff, Brandon Rexroat, guilty of battery in a prison disciplinary hearing and imposed sanctions including $100 in restitution. Mr. Rexroat alleges that Officer Chapman violated his due process rights during his disciplinary hearing. He seeks an award of damages.

Officer Chapman has moved for summary judgment. Dkt. [35]. For the reasons below, that motion is **GRANTED in part and DENIED in part**.

**I.
Facts and Background**

Because Officer Chapman has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

During the time relevant to this lawsuit, Mr. Rexroat was a prisoner at Wabash Valley Correctional Facility. Dkt. 9. Around May 1, 2019, he was charged with battery in violation of prison code A-102:

> On [April 4, 2019], offender Rexroat, Brandon #121033 can be seen entering offender Morgan, Christian #203268 cell. Rexroat then exited the cell approximately 8 seconds later. Soon after, Morgan was found to have injuries. See attached report of investigation.

Dkt. 35-2, p. 1 (Report of Conduct). Mr. Rexroat was initially found guilty, but his charge was then "re-heard on multiple occasions." Dkt. 35-1 at 1–2 (Chapman decl.).

Around January 3, 2020, Mr. Rexroat's disciplinary case was reassigned to Officer Chapman for rehearing. *Id.* at 2. On January 8, 2020, Mr. Rexroat received written notice of the charge and a copy of the Report of Conduct. *Id.* at 2; *see* dkt. 35-4. Mr. Rexroat requested the surveillance video of the incident and asked to call as witnesses Detrell Brown, Michael Garcia, a correctional officer, and a nurse. Dkt. 35-4.

On January 30, 2020, Officer Chapman held a disciplinary rehearing and found Mr. Rexroat guilty of battery. Dkt. 35-1 at 2–3. She imposed a written reprimand, one year of disciplinary segregation, $100 in restitution for medical expenses, the loss of 59 days earned credit time, and a demotion in credit-earning class. *Id.* at 3. Mr. Rexroat appealed to IDOC's Central Office, which affirmed his conviction but vacated all sanctions except the $100 restitution order. Dkt. 38 at 3.

Mr. Rexroat filed this case in June 2020, dkt. 1; his amended complaint alleges that Officer Chapman violated his due process rights by denying him an adequate copy of the charge, preventing him from calling witnesses,

withholding evidence, and refusing to give him a copy of her decision, dkt. 9; *see* dkt. 19 (screening order).

Officer Chapman has moved for summary judgment. Dkt. 35. Additional facts will be added as they become relevant.

## II.
## Applicable Law

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## III.
## Analysis

Mr. Rexroat alleges that Officer Chapman violated his due process rights during his disciplinary hearing. In her initial brief seeking summary judgment on that claim, Officer Chapman did not recognize that Mr. Rexroat's sanctions, except the $100 restitution, had been vacated. *See* dkt. 36 at 1, 4. She argued that Mr. Rexroat's claims were barred by *Heck v. Humphrey*, that his due process rights were not violated, and that she was not involved in his placement in administrative segregation—but she did not address Mr. Rexroat's placement in disciplinary segregation. *Id.* at 6–10. Mr. Rexroat's response explained that "all sanction[s] [were] vacated during my administrative appeal except $100 in restitution," dkt. 38 at 3, and Officer Chapman's reply acknowledged that most of Mr. Rexroat's sanctions had been vacated in May 2020. Dkt. 41 at 4.[1] She therefore argued that Mr. Rexroat's due process rights were not implicated because her decision resulted only "in Plaintiff serving three months in [disciplinary segregation] before Central Office vacated

---

[1] Counsel should have thoroughly investigated the facts before moving for summary judgment; then, after realizing the mistake, should have admitted it in reply and withdrawn any meritless arguments. *See* Fed. R. Civ. P. 11(b); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) ("Counsel may not drop papers into the hopper and insist that the court or [the] opposing [party] undertake bothersome factual and legal investigation.").

4

his sanctions," and that she is entitled to qualified immunity. *Id.* at 9–11. Mr. Rexroat filed a surreply addressing those new arguments. Dkt. 42.

### A. *Heck v. Humphrey*

Officer Chapman initially argued that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Mr. Rexroat's due process claims because a favorable judgment on those claims would imply the invalidity of his disciplinary conviction. Dkt. 36 at 6–7. *Heck*, however, applies to prison disciplinary convictions only if they affect the duration of the plaintiff's custody. *Muhammed v. Close*, 540 U.S. 749, 754–55 (2004). Here, both parties acknowledge that the sanctions affecting the duration of Mr. Rexroat's custody have been vacated. Dkt. 38 at 3; dkt. 41 at 2. *Heck* therefore does not entitle Officer Chapman to summary judgment.

### B. Administrative Segregation

Officer Chapman argued in her initial brief that she is entitled to summary judgment on Mr. Rexroat's claims seeking damages for his placement in administrative segregation because she was not personally involved in that placement. Dkt. 36 at 9-10. Mr. Rexroat did not address this argument in his response. *See* dkt. 38.

"Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Similarly, there must be a "causal connection, or an

affirmative link, between the misconduct complained of and the official sued." *Id.*

The uncontradicted evidence shows that Warden Richard Brown and Classification Director Charles Dugan placed Mr. Rexroat in administrative segregation after his disciplinary sanctions were vacated. Dkt. 41-6; *see* dkt. 41-1 at 3. Officer Chapman has sworn: "I did not take any additional action with regard to [Mr. Rexroat], nor was I involved in any decision to place [Mr. Rexroat] in administrative [segregation]." Dkt. 35-1 at 4. Mr. Rexroat has designated no contrary evidence, and without personal involvement, Officer Chapman is entitled to summary judgment. *See Colbert*, 851 F.3d at 657. Moreover, no evidence shows a "causal connection" or "affirmative link" between the placement in administrative segregation and the alleged due process violations. *See id.* While the decision to place Mr. Rexroat in administrative segregation was based on his "extensive conduct history, including serious violence," dkt. 41-1 at 3, that is too tenuous a connection to the disciplinary conviction that Officer Chapman entered. Indeed, shortly before that conviction, Mr. Rexroat pleaded guilty to battery in another case, *id.* at 2; dkt. 41-3, and Mr. Rexroat had also been found guilty of other conduct violations, dkt. 35-3. Accordingly, Officer Chapman "had no responsibility" for Mr. Rexroat's placement in administrative segregation. *Carmody v. Bd. of Tr. of Univ. of Ill.*, 893 F.3d 397, 401–02 (7th Cir. 2018).

**B. Disciplinary Segregation**

Because Officer Chapman was not personally responsible for Mr. Rexroat's administrative segregation, his due process claim is limited to his disciplinary segregation, which lasted from January 30, 2020[2] until May 27, 2020. Dkt. 41-1 at 10. To succeed on this claim, Mr. Rexroat "must demonstrate (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient." *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). Officer Chapman argues that Mr. Rexroat's time in disciplinary segregation from his disciplinary conviction was too short to implicate any liberty interests. Dkt. 41 at 9–10.[3] Mr. Rexroat contends in his surreply that the conditions in segregation are severe enough to implicate his liberty interests. Dkt. 42 at 3–4.

"Avoiding segregation can constitute a protected liberty interest," but "only when the confinement imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle*, 933 F.3d at

---

[2] The record is unclear about the beginning date. It appears that disciplinary segregation was recommended initially on January 8, 2020 but was not approved by the Central Office Classification Division until March 10, 2020. Dkt. 41-1 at 2; dkt. 41-5. Regardless, Officer Chapman concedes that Mr. Rexroat was in disciplinary segregation beginning January 30, 2020—the date she found him guilty of battery. Dkt. 41 at 9. Since she would not be personally responsible for any segregation before that date, the Court accepts that concession.

[3] While Officer Chapman raised this argument for the first time in reply, Mr. Rexroat responded to it in his surreply, dkt. 42, so there is no need to invoke waiver or Federal Rule of Civil Procedure 56(f)'s procedure for granting summary judgment "on grounds not raised by a party." *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 735–36 (7th Cir. 2006).

720–21. "[B]oth the duration of the segregation and the conditions endured" are relevant. *Id.* at 721.

The duration of Mr. Rexroat's disciplinary segregation—less than four months—does not generally support finding a liberty interest. *See id.* ("A sentence of four months in segregation for the discovery of contraband is not so atypical and significantly harsh that it creates a liberty interest."); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). Mr. Rexroat therefore would have to show "that the conditions of his confinement in his segregated cell deviated substantially from the ordinary conditions of prison life." *Lisle*, 933 F.3d at 721. But he has not designated evidence allowing a jury to make that finding. Instead, he designates evidence about his *current* conditions in *administrative* segregation—including that "it is over 100° in our cells and the fans on the range have been broke the entire year" and that he "cannot order any Commissary at all no food and no hygiene whatsoever." Dkt. 42 at 3–4. He has not said that disciplinary segregation is the same, or that those conditions—such as extreme heat—were present from January to May of 2020. *See id.*

Because there is no evidence from which a jury could find that Mr. Rexroat suffered "atypical and significant hardship" in disciplinary segregation, Officer Chapman is entitled to summary judgment on this claim. *See Lisle*, 933 F.3d at 721 ("[I]f the disciplinary measures do not 'substantially worsen the conditions of confinement' of an inmate, then he has not been deprived of a protected liberty interest.").

### C. Restitution

Because Mr. Rexroat's disciplinary segregation does not implicate a liberty interest, the only remaining sanction is $100 restitution for medical expenses. *See* dkt. 38 at 3. To succeed in this due process claim, Mr. Rexroat must demonstrate that the restitution order deprived him of a liberty interest and that the procedures he was afforded were constitutionally deficient. *See Lisle*, 933 F.3d at 720.

Mr. Rexroat "has a protected interest in his funds to the extent that they are not needed to reimburse the prison for expenses that it has incurred . . . because of his rule violation." *Tonn v. Dittman*, 607 Fed. App'x 589, 590 (7th Cir. 2015); *Fisher v. Ind. Dept. of Corr.*, No. 3:22-CV-229-DRL-MGG, 2022 WL 1202929 at *1 (N.D. Ind. Apr. 21, 2022). He is therefore entitled to due process before being ordered to pay restitution. *See Tonn*, 607 Fed. App'x at 590. "Due process requires that prisoners in disciplinary proceedings be given: '(1) advance written notice of the claimed violation at least 24 hours before the hearing; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence consistent with institutional safety; and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.'" *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007).

Mr. Rexroat alleges that he received none of those due process protections. Dkt. 9 at 1–2. While Officer Chapman has not acknowledged Mr.

Rexroat's protected interest in the restitution funds, she argues that he received due process in the disciplinary proceeding. Dkt. 36 at 7–9.

### 1. Advance Written Notice

Due process entitles Mr. Rexroat to written notice at least 24 hours before his hearing informing him "of the rule allegedly violated and summariz[ing] the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003).

Here, Mr. Rexroat was notified of the charge through the Report of Conduct on January 8, 2020, dkt. 35-3, then his hearing was on January 30, 2020, dkt. 35-5. The Report informed him that he was charged with committing battery on April 4, 2019 and told him the identity of the alleged victim and where the battery allegedly took place. Dkt. 35-2. Mr. Rexroat nevertheless argues that the Report "fails to state what [he] did" and that the victim was faking the injuries. Dkt. 38 at 4. But the only requirement is a summary of the allegations that "permits the accused to gather the relevant facts and prepare a defense." *Northern*, 326 F.3d at 910. The notice here was "ample" to that purpose. *Id.* Officer Chapman is therefore entitled to summary judgment on this ground.

### 2. Right to an Impartial Hearing Officer

Mr. Rexroat's amended complaint alleges that he was denied the right to a "fair and impartial hearing officer," dkt. 9 at 1, but Officer Chapman did not

address this due process claim in her motion for summary judgment. This alleged violation therefore remains for trial.

### 3. Live Witness Testimony and Confidential Informant

Mr. Rexroat has a "a due process right to call witnesses at [his] disciplinary hearing[ ] when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Officer Chapman argues that she did not violate due process by (1) declining to disclose a confidential informant, and (2) deciding to allow written statements but not live witness testimony. Dkt. 36 at 8.

For the confidential informant, Officer Chapman has designated evidence that she found the confidential informant's testimony reliable but did not disclose the testimony because it "may put the confidential informant and/or institutional safety and security at risk." Dkt. 35-1 at 3. She has not, however, provided for *in camera* review "the factual basis for [her] finding as to the [confidential informant's] reliability." *Mendoza v. Miller*, 779 F.2d 1287, 1295 (7th Cir. 1985). She is therefore not entitled to summary judgment on this basis. *See id.* ("[P]rison officials may satisfy the inmate's right to procedural due process by documenting the reliability of the informant in a confidential report and submitting that report to the court for *in camera* review.").

For declining to hear live witnesses, Officer Chapman argues that there was no due process violation because "prisoners have no right to confrontation or even cross-examination in disciplinary proceedings." Dkt. 36 at 8 (citing

11

*Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976)). While there is no due process right to confront and cross-examine witnesses, *see Baxter*, 425 U.S. at 315, that does not undermine the right to live testimony when feasible. *See Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998) ("We are . . . unconvinced by the prison's assertion that its policy of interviewing requested witnesses and summarizing their testimony in an unsworn report is a legitimate means of 'calling a witness' even when live testimony would be feasible."); *Doan v. Buss*, 82 F. App'x 168, 170-71 (7th Cir. 2003) ("[D]ue process typically requires a case-by-case evaluation of whether live testimony can be provided without threatening institutional goals.").

Officer Chapman has designated no evidence that live testimony was not feasible, so she is not entitled to summary judgment on this ground.

### 4. Written Findings

"[D]ue process requires that an inmate subject to disciplinary action is provided a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Officer Chapman argues that this requirement was satisfied when she mailed him a copy of the Report of Disciplinary Hearing. Dkt. 36 at 8; dkt. 35-1 at 4 (Chapman decl.); dkt. 35-5[4]. Mr. Rexroat, however, has

---

[4] The report includes a statement that the offender has "been made aware of this disposition," but under "Signature of offender" says "unable to sign—Restraint—Seg." Dkt. 35-5.

testified that he did not receive the Report of Disciplinary Hearing until he received the initial disclosures in this case. Dkt. 38 at 6-7.

Viewing this conflicting evidence in the light most favorable to Mr. Rexroat, the Court assumes for purpose of summary judgment that Mr. Rexroat was not provided the Report of Disciplinary Hearing. Officer Chapman is therefore not entitled to summary judgment on this ground.[5]

### IV.
### Conclusion

The motion for summary judgment is **GRANTED in part and DENIED in part**. Dkt. [35]. Only Mr. Rexroat's $100 restitution sanction can support a triable due process claim, and that claim is limited to the grounds that Officer Chapman (1) was not an impartial hearing officer, (2) failed to disclose confidential informant evidence and did not allow live testimony, and (3) did not provide a written statement of the decision.

**SO ORDERED**.

Date: 9/30/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[5] In his response brief, Mr. Rexroat also alleges that he was denied an exculpatory witness statement and that there was not "some evidence" supporting his conviction. Dkt. 38 at 5–6. Mr. Rexroat did not make those allegations in his amended complaint so they are not before the Court. *See* dkt. 9.

Distribution:

BRANDON REXROAT
121033
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1946 West U.S. Hwy 40
GREENCASTLE, IN 46135

All Electronically Registered Counsel